UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADAM DISARRO,

      Plaintiff,

v.                              Case No:  2:23-cv-230-JES-KCD

EZRICARE, LLC, EZRIRX, LLC,
ARU   PHARMA,   INC.,   and
AMAZON.COM, INC.,

      Defendants.

_____

**<u>OPINION AND ORDER</u>**

    This matter comes before the Court on review of defendant EzriRx LLC's Motion to Dismiss (Doc. #20) for lack of personal jurisdiction and defendants EzriCare LLC and EzriRx LLC's Motion to Dismiss (Doc. #21).  Plaintiff filed a Response in Opposition to Motion (Doc. #43) and Opposition to Defendants' Motion (Doc. #42) respectively.  EzriRx filed a Reply Brief in Further Support (Doc. #66) on the issue of personal jurisdiction.  The Court stayed the case as to Aru Pharma, Inc., based on notification of its bankruptcy filing.  (Doc. #52.)  Defendant Delsam Pharma, LLC was dropped as a defendant in this case and terminated.  (Doc. #58.) Amazon.com was directed to show cause for failure to respond to the Amended Complaint (Doc. #17), however a Notice of Joinder with ExriCare's Motion to Dismiss (Doc. #23) was filed on April 25,

2023.[1]  The Court will consider the argument in the Motion to Dismiss (Doc. #21) as also applicable to Amazon.com.

## I.

The operative pleading is the Amended Complaint (Doc. #17) (the Amended Complaint.)  The Amended Complaint sets forth three counts in connection with artificial tears products:  Strict Product Liability (Count I), Negligence (Count II), and Negligence Per Se (Count III).  Federal jurisdiction is premised on diversity of citizenship.  The Court will first discuss the personal jurisdiction issue raised by EzriRx.

### A.  Personal Jurisdiction Principles

To proceed with a case, the court must have both subject matter jurisdiction and personal jurisdiction over each defendant. Federal Rule of Civil Procedure Rule 12(b)(2) allows a defendant to file a motion to dismiss based on a lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2). "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the

---

[1] Amazon.com filed a Response to Show Cause Order (Doc. #65) indicating that the joinder had been filed after confirming telephonically that the Order to Show Cause was issued in error.

United States Constitution." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).

Personal jurisdiction over a particular defendant may be either general jurisdiction or personal jurisdiction. See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., __ U.S. __, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (Mar. 25, 2021). "A defendant can be subject to personal jurisdiction under the Florida long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, id. § 48.193(2)." Schulman v. Inst. for Shipboard Educ., 624 F. App'x 1002, 1004-05 (11th Cir. 2015).

Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the non-resident defendant. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009). "A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. The district court must construe the allegations in the

3

complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Mazer, 556 F.3d at 1274 (citations omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002) (citation omitted).

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Oldfield, 558 F.3d at 1220 (citations omitted).

**B. Personal Jurisdiction in This Case**

The Amended Complaint alleges that EzriRx, LLC is "engaged in the business of manufacturing, labeling, packaging, importing, selling, distributing, advertising and/or marketing artificial tears products throughout the United States, including the State of Florida." (Doc. #17, ¶ 5.) The Amended Complaint alleges

general personal jurisdiction over EzriRx because it does business in Florida and the tort was committed in Collier County, Florida. (Id.)  The Amended Complaint further alleges specific jurisdiction over EzriRx because it, along with the other defendants, specifically "sold, supplied, distributed, shipped, advertised, and/or marketed Artificial Tears to Collier County, Florida residents and/or Florida businesses, including the artificial tears that caused damages to Plaintiff."  (Id. at ¶ 10.)

(1)  **General Jurisdiction**

General jurisdiction may be established if the defendant "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

> This standard has been interpreted by Florida courts to require a "showing of 'continuous and systematic general business contacts' with the forum state." Carib-USA [Ship Lines Bahamas Ltd. v. Dorsett, 935 So. 2d 1272, 1275 (Fla. 4th DCA 2006)] (quoting Helicopteros [Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868 (1984)]; Seabra [v. Int'l Specialty Imports, Inc., 869 So. 2d 732, 734 (Fla. 4th DCA 2004)]. "The continuous and systematic general business contacts sufficient to confer general jurisdiction present a *much higher threshold* than those contacts necessary to support specific jurisdiction under section 48.193(1)." Trs. of Columbia Univ. v. Ocean World, S.A., 12 So. 3d 788, 792 (Fla. 4th DCA 2009) (emphasis added)

> (citation and internal quotation marks
> omitted). This is because "jurisdiction under
> section 48.193(2) does not require that a
> lawsuit's cause of action arise from activity
> within Florida, or that there be any
> connection between the claim and the
> defendant's Florida activities." Id.

Caiazzo v. Am. Royal Arts Corp., 73 So. 3d 245, 258-59 (Fla. 4th

DCA 2011).  The Amended Complaint alleges:

> Furthermore, this Court has jurisdiction over
> Defendants because each conducted and did
> business in Collier County, Florida. Moreover,
> Defendants committed tortious acts in the
> State of Florida, caused injury to a person
> within this state with their products,
> materials, things processed, serviced, or
> manufactured by the Defendants which were used
> or consumed within this State in the ordinary
> course of commerce, trade, or use. Therefore,
> Defendants are subject to the jurisdiction of
> this State pursuant to Fla. Stat. 48.193 (1),
> (2) and (6).
>
> In addition, this Court has jurisdiction over
> these Defendants because each defendant
> engages in continuous and substantial contacts
> with the State of Florida, purposefully having
> their activities in Florida, including the
> placement of their goods into the stream of
> commerce in Collier County, Florida with the
> intention of having consumers here buy their
> products. This litigation arises out of those
> activities.

(Doc. #17, ¶¶ 11-12.)  Plaintiff purchased two EzriCare Artificial

Tears from Amazon.com in May 2022, and another two-pack in

September 2022.  (Id. at ¶ 16.)  Defendants allegedly sold the

products through retailers like Walmart, eBay, and Amazon.  (Id.

at ¶ 27.)

Ezriel Green submitted an Affidavit (Doc. #20-1) as the Founder and Chief Executive Officer of EzriRx LLC. According to the Affidavit, EzriRx is headquartered in New Jersey and is an online marketplace that assists pharmacies in purchasing prescription medications, over-the-counter drugs, and pet medication. EzriRx does not sell directly to consumers.

It is certainly correct that "'the mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.'" <u>Caiazzo</u>, 73 So. 3d at 259-60 (citation omitted). But none of the statements in the Affidavit directly contradict the allegations in the Amended Complaint. <u>See, e.g.</u>, Doc. #17, ¶ 27 ("Defendants EzriCare and EzriRx sold these products through retailers like Walmart, eBay, and named Defendant, Amazon"). EzriRx routinely did business in Florida with third-party retailers who made sales to consumers including plaintiff. The Court finds that defendant's course of business, including the isolated purchases by plaintiff through a third-party retailer, establishes the presence of 'continuous and systematic general business contacts' within the State by EzriRx for purposes of general jurisdiction.

### (2) Specific Jurisdiction

Specific jurisdiction over a non-resident may be based on specific acts committed within the State of Florida, such as carrying on business, owning property, causing injury to persons

or property, or engaging in solicitation as long as the cause of action arises from the act committed in Florida.  Fla. Stat. § 48.193(1)(a).  Specific jurisdiction requires two allegations. "These dual requirements—that the defendant's conduct occur in Florida and that the plaintiff's cause of action arises from such Florida activity—are known as the statute's connexity requirement." Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018).  So, a defendant:

> must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there.

Ford Motor Co., 141 S. Ct. at 1024-25.

The Amended Complaint alleges that defendants conducted business and engaged in or carried on business in the State by entering into contracts and operating and conducting business in the State.  "Specifically, EzriCare, EzriRx, Delsam Pharma, Aru Pharma, and Amazon sold, supplied, distributed, shipped, advertised, and/or marketed Artificial Tears to Collier County, Florida residents and/or Florida businesses, including the

artificial tears that caused damages to Plaintiff." (Doc. #17, ¶¶ 9-10.) While EzriRx asserts it is an online marketplace that does not sell to consumers directly and that did not sell directly to plaintiff, it purposefully availed itself of the Florida forum by the sale of goods it knew would be sold in Florida to consumers such as plaintiff. The Court concludes that plaintiff has shown sufficient facts to establish specific personal jurisdiction in Florida.

### (3)   Due Process

Whether personal jurisdiction comports with due process is a two-step process: First, the Court decides whether "minimum contacts" with Florida have been established. Second, the Court decides whether the exercise of personal jurisdiction over a defendant would offend "traditional notions of fair play and substantial justice." Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990).

### (a)   Minimum Contacts

Due process requires 'fair warning' of a particular activity that may subject a defendant to jurisdiction in a foreign State. "This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, [] and the litigation results from alleged injuries that "arise out of or relate to" those activities." Madara, 916 F.2d at 1516 (internal citations omitted). "This 'purposeful availment' requirement

ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, [ ] or of the "unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations omitted).

It must be clear that defendant could reasonably "anticipate being haled into court [in the State of Florida]." Madara, 916 F.2d at 1516. "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state." Id.

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Burger King Corp., 471 U.S. at 476 (citations omitted).

As noted above, plaintiff made the purchase through a third-party and not directly from defendant. This business model cannot preclude defendant from suit in Florida, a state in which it knew

its products would be routinely sold and distributed.  See Doc.
#20-1, ¶ 7 ("EzriRx is an online marketplace platform that assists
pharmacies in purchasing prescription medications, over-the-
counter drugs, and pet medication").  Defendant had a reasonable
expectation of being haled into court in Florida.  The minimum
contacts requirement has been satisfied at this point in the
proceedings.

### (b)  Fair Paly and Substantial Justice

If minimum contacts are established, the Court must consider
other factors to ensure that personal jurisdiction "does not offend
'traditional notions of 'fair play and substantial justice.'"
Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. &
Placement, 326 U.S. 310, 316 (1945) (citations omitted).

> Thus courts in "appropriate case[s]" may
> evaluate "the burden on the defendant," "the
> forum State's interest in adjudicating the
> dispute," "the plaintiff's interest in
> obtaining convenient and effective relief,"
> "the interstate judicial system's interest in
> obtaining the most efficient resolution of
> controversies," and the "shared interest of
> the several States in furthering fundamental
> substantive social policies." World-Wide
> Volkswagen Corp. v. Woodson, 444 U.S. [286,
> 292, 100 S. Ct. 559, 564 (1980)].

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985).  The
Court concludes that the other factors show that personal
jurisdiction does not offend traditional notions of fair play and

substantial justice.  The motion to dismiss for lack of personal jurisdiction is denied.

### III.

Defendants, collectively and by separate motion, also argue that the Complaint fails to state a claim upon which relief may be granted.  Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### A. Group Pleading

Defendants argue that plaintiff improperly lumps all "defendants" together, effectively alleging that all five defendants manufactured, packaged, labeled, imported, sold, supplied, distributed, advertised, and/or marketed the product, rather than delineating each defendant's role. (Doc. #21, pp. 7-8.) Defendants also argue that the Amended Complaint is a shotgun pleading because the counts incorporate all of the factual allegations without adding any facts pertinent to each count.

Addressing the second issue first, plaintiff incorporates the allegations in paragraphs 1 through 34 of the Amended Complaint into each count. This includes all jurisdictional and factual allegations. However, plaintiff did not incorporate the preceding counts into the subsequent counts, and therefore the Amended

Complaint is not a shotgun pleading.   There is no pleading requirement that new facts must be added to each count, since a single set of facts may give rise to multiple claims.

The Amended Complaint alleges that defendants collectively acted as manufacturer, distributer, supplier, importer, seller, and/or advertiser without specifying the specific role of each defendant.  A type of shotgun pleading is "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015).

Plaintiff argues that it does not have the information to be more specific.  "Should the Court require greater specificity as to which Defendant is responsible for each articulated act, it should be noted that without the benefit of discovery, the exact and precise roles of EzriCare, EzriRX, Delsam Pharma and Aru Pharma is unknown, as this information is not generally known or easily ascertainable to the public."  (Doc. #42, p. 7.)

The Court finds that the 'lumping' in the Amended Complaint does not take away from the plausibility of the counts and defendants are given sufficient notice of their own role in relation to the manufacturing, distribution, and/or sale of the artificial tears in question.  Quality Auto Painting Ctr. of

Roselle, Inc. v. State Farm Indem. Co., 917 F.3d 1249, 1275 (11th Cir. 2019).

**V.**

Defendants argue that the Amended Complaint incorporates language seeking to enforce FDA regulations when there is no private cause of action available to enforce the FDA regulations. Defendant argues that all the allegations are based on a violation of FDA regulations, and not a tort.  In response, plaintiff states that the "mere mention of FDA violations does not conclude that Plaintiff's claims rest *solely* on such federal violations", and courts recognize claims arising from a manufacturer's failure to use reasonable care in the production of a product.  (Doc. #42, p. 14.)  Plaintiff further argues that the strict liability and negligence claim rests on common tort and state law duties.

Defendants also argue that the negligence per se claim (Count III) fails as a matter of law because it is based entirely on the allegation that defendants violated federal regulations. Plaintiff concedes this issue and asks for leave to amend Count III.  The motion to dismiss will be granted as to Count III without prejudice to amend that claim.

Count I alleges strict product liability by all defendants for defective artificial tears causing injury that was reasonably foreseeable to a reasonably foreseeable intended user of defendants defective and unreasonably dangerous product

contaminated with a deadly bacteria.  (Doc. #17, ¶¶ 36-38.)  "The
artificial tears manufactured, packaged, labeled, imported, sold,
supplied, distributed, advertised, and/or marketed by Defendants
were defective and unreasonably dangerous for their reasonably
foreseeable uses because they were contaminated with the harmful
and deadly bacteria, known as *Pseudomonas Aeruginosa*."  (<u>Id.</u> at ¶
39.)  Plaintiff suffered injuries caused by the unsafe and
defective product.  (<u>Id.</u> at ¶¶ 42-43.)

> Florida adopted the strict products liability
> standard of the Restatement (Second) of Torts
> § 402A in <u>West v. Caterpillar Tractor Co.</u>, 336
> So. 2d 80, 87 (Fla. 1976).  Under this
> standard, the manufacturer of a defective
> product can be held liable if the manufacturer
> made the product in question, if the product
> has a defect that renders it unreasonably
> dangerous, and if the unreasonably dangerous
> condition is the proximate cause of the
> plaintiff's injury. <u>Id.</u>  The manufacturer's
> liability also extends to bystanders who are
> injured by the defective product. <u>Id.</u> at 89.

<u>Jennings v. BIC Corp.</u>, 181 F.3d 1250, 1255 (11th Cir. 1999).  "To
state a claim in Florida for strict products liability based on a
design or manufacturing defect, a plaintiff must plead three
elements: (1) a relationship between the defendant and the product;
(2) a defect which caused the product to be unreasonably dangerous;
(3) causation between the defect and the harm suffered by the
user." <u>Dye v. Covidien LP</u>, 470 F. Supp. 3d 1329, 1334 (S.D. Fla.
2020).  "[A] distributor or retailer is answerable in strict
liability when it is within the distributive chain via which the

16

allegedly defective product made its way from the manufacturer to the injured consumer or user." Devore v. Howmedica Osteonics Corp., 658 F. Supp. 2d 1372, 1378 (M.D. Fla. 2009) (citing Rivera v. Baby Trend, Inc., 914 So. 2d 1102, 1104 (Fla. 4th DCA 2005)).

The Court finds that plaintiff has sufficiently alleged the defect at issue leading to an unreasonably dangerous condition without having to specify when and how the defect occurred. See, e.g., Krywokulski v. Ethicon, Inc., No. 8:09-CV-980-T-30MAP, 2010 WL 326166, at *3 (M.D. Fla. Jan. 21, 2010) ("Plaintiff's allegation of a defect alone is sufficient, as mere knowledge of a defect gives defendant enough notice to produce a proper response which may include discussion of a manufacturing or design based defect." (citation omitted)).

In Count II, plaintiff alleges negligence in the duty owed to the consuming public to exercise reasonable care to design, manufacture, inspect, test, distribute, and sell products free of unreasonable risk of harm to users and patients of a product used as intended. (Doc. #17, ¶¶ 45-46.) Plaintiff alleges "Defendants were negligent in how they manufactured, distributed, packaged, labeled, supplied, marketed, advertised, and/or sold products that were adulterated with *Pseudomonas aeruginosa,* contaminated with *Pseudomonas Aeruginosa,* and not reasonably safe because they were contaminated with *Pseudomonas Aeruginosa* and because adequate warnings or instructions were not provided, including but not

limited to the warning that its products may contain *Pseudomonas Aeruginosa,* and thus should not be given to, or used by humans." (Id. at ¶ 49.)  Plaintiff alleges that defendants "had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation of its products, to ensure compliance with Defendants' operating standards and to ensure compliance with all applicable health regulations. Defendants failed to properly supervise, train, and monitor these employees, or the employees of its agents or subcontractors engaged in the import, manufacture, preparation, and delivery of the products, and thus breached that duty." (Id. at ¶ 50.)  Plaintiff alleges defendants owed a duty to comply with statutory and regulatory provisions and the unsafe products failed to conform to this duty. (Id. at ¶¶ 51-52.)  Plaintiff alleges that defendants owed a duty to exercise reasonable care in the preparation and sale of its products. (Id. at ¶ 53.)  "Defendants' negligent acts and omissions included but were not limited to the following: Defendants' current good manufacturing practice (CGMP) violations, including lack of appropriate microbial testing, formulation issues (the company manufactures and distributes ophthalmic drugs in multi-use bottles, without an adequate preservative), and lack of proper controls concerning tamper-evident packaging." (Id. at ¶ 55.)  The manufacturing,

distribution, and sale of adulterated products caused injury to plaintiff.  (Id. at ¶¶ 58-59.)

A claim of negligence in a products liability case requires the establishment of four elements to prevail:

> The elements of negligence in a product liability case are "'(1) the manufacturer was under a legal duty to design and manufacture a product reasonably safe for use, (2) the manufacturer breached that duty, (3) the plaintiff suffered an injury that is legally caused by the manufacturer's breach, and (4) the plaintiff suffered damages.'" Hummel v. Tamko Bldg. Prod., Inc., 303 F. Supp. 3d 1288, 1299 (M.D. Fla. 2017) (quoting Indem Ins. Co. of N. Am. v. Am. Aviation, Inc., 344 F.3d 1136, 1146 (11th Cir. 2003) (per curiam)). Florida law recognizes common law negligence claims based on design defects, manufacturing defects, and failure to warn. See Godelia v. Doe 1, 881 F.3d 1309, 1318 (11th Cir. 2018) ("[A] manufacturer's duty to inspect and test ... is a subpart of a manufacturer's duty to design a product with reasonable care" (internal quotations omitted)); Mink v. Smith & Nephew, Inc., 860 F.3d 1319, 1329 (11th Cir. 2017); Ford Motor Co. v. Evancho, 327 So. 2d 201, 204 (Fla. 1976) ("the manufacturer must use reasonable care in design and manufacture of its product to eliminate unreasonable risk of foreseeable injury").

Flaherty v. E-Go Bike, LLC, No. 2:21-CV-728-SPC-MRM, 2022 WL 445428, at *5 (M.D. Fla. Feb. 14, 2022).  "[A] products liability action grounded in negligence must involve allegations as to a manufacturer or other distributor of a product." Williams v. Nat'l Freight, Inc., 455 F. Supp. 2d 1335, 1337 (M.D. Fla. 2006).

While plaintiff alleges a duty, a breach of the duty, an injury and damages, some of the duties are based on actions that would be a violation of FDA regulations. "However, district courts in this Circuit have consistently held that private actions like Plaintiff's that seek to enforce violations of FDA regulations are barred because Florida does not recognize such causes of action." Kaiser v. Depuy Spine, Inc., 944 F. Supp. 2d 1187, 1192 (M.D. Fla. 2013) (collecting cases). "[C]ommon law causes of action may avoid federal preemption so long as there is a state duty that is owed to the plaintiff and the common-law claim imposes only requirements that parallel the federal requirements." Mink v. Smith & Nephew, Inc., 860 F.3d 1319, 1328 (11th Cir. 2017).

To the extent that the allegations rely solely on FDA regulations or a violation of the Food, Drug and Cosmetic Act, the Court finds that plaintiff cannot state a private cause of action. The Court does find that plaintiff may state a parallel claim under a negligence theory. See, e.g., Mink v. Smith & Nephew, Inc., 860 F.3d 1319, 1329 (11th Cir. 2017) (allowing manufacturing defect theory to proceed); Godelia v. Doe 1, 881 F.3d 1309, 1318 (11th Cir. 2018) (recognizing negligence claim based on violation of a statute as evidence of negligence); Rowe v. Mentor Worldwide, LLC, 297 F. Supp. 3d 1288, 1299 (M.D. Fla. 2018) (allowing parallel claim of negligence). The Court will allow plaintiff to amend

Count II to the extent that clarification is required and because leave is requested.  (Doc. #42, p. 17.)

Accordingly, it is now

**ORDERED:**

1. Amazon.com's Notice of Joinder with ExriCare's Motion to Dismiss (Doc. #23) is accepted and the motion to dismiss will be considered as to Amazon.com.

2. EzriRx LLC's Motion to Dismiss (Doc. #20) for lack of personal jurisdiction is **DENIED**.

3. Defendants EzriCare LLC and EzriRx LLC's Motion to Dismiss (Doc. #21) is **GRANTED** as to Counts II and III and otherwise **DENIED**.

4. The Amended Complaint is **dismissed without prejudice** to filing a Second Amended Complaint to amend any count within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this   25th   day of July 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record